IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WENDY ROCHELLE RHODES,<br>4311 5th Avenue<br>Los Angeles, CA 90008,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE<br>ARMY;<br>CHRISTINE E. WORMUTH, in her official<br>capacity as Secretary of the Army;<br>AGNES GEREBEN SCHAEFER, in her<br>official capacity as Assistant Secretary of the<br>Army for Manpower and Reserve Affairs;<br>DENNIS W. DINGLE, in his official<br>capacity as Director of the Army Board for<br>Correction of Military Records,<br>200 Army Pentagon, Washington, D.C.<br>20310-0200, and LLOYD AUSTIN, in his<br>official capacity as Secretary of the U.S.<br>Department of Defense.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **COMPLAINT**

1.      Pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, et seq. ("APA") and

the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, Plaintiff Wendy Rhodes brings this

action for declaratory and injunctive relief against Defendants the United States Department of the

Army; Christine E. Wormuth, in her official capacity as Secretary of the Army; Agnes Gereben

Schaefer, in her official capacity as Assistant Secretary of the Army for Manpower and Reserve

Affairs; Dennis W. Dingle, in his official capacity as Director of the Army Board for Correction of

Military Records; and Lloyd Austin, in his official capacity as the Secretary of the U.S. Department of Defense ("DoD") (collectively, the "Army").

2.      On October 26, 2016, Ms. Rhodes, an Army veteran, applied to the Army Board for Correction of Military Records ("Board" or "ABCMR") to upgrade the status of her discharge from "Under Other than Honorable Conditions" to "Honorable" or "General Under Honorable Conditions" (the "Application"). The Application sought an upgrade based on her faithful and honest military service; evidence that she had experienced service-connected post-traumatic stress disorder ("PTSD") and depression related to military sexual trauma during her service; and DoD guidance regarding the consideration of service-related mental health conditions in discharge upgrades.

3.      In support of her Application, Ms. Rhodes presented a personal statement detailing the events of her service and six letters of support attesting to her character and reputation. The Board denied Ms. Rhodes' Application on April 1, 2020.

4.      On September 3, 2020, Ms. Rhodes applied to the Board for reconsideration of her Application based on additional supporting evidence (the "Reconsideration Request").

5.      In connection with her Reconsideration Request, a Behavioral Health Advisor reviewed Ms. Rhodes' U.S. Department of Veterans Affairs ("VA") electronic medical record and issued an advisory opinion ("AO"). The AO acknowledged that Ms. Rhodes had been diagnosed with PTSD related to military sexual trauma as a result of her service. The AO further noted that Ms. Rhodes had been receiving mental health treatment at the VA since 2017 and recommended the Board upgrade Ms. Rhodes' discharge to "Honorable." In other words, the AO determined that Ms. Rhodes' mental health conditions outweighed the misconduct that led to her separation. The Board had an obligation to weigh Ms. Rhodes' mental health conditions as mitigating factors to

the misconduct that led to her discharge, especially when considered in light of the circumstances under which those conditions arose—but it did not.

6.     Nevertheless, and contrary to law, the Board ignored the extensive corroborating evidence supporting Ms. Rhodes' original statement and denied the Reconsideration Request on June 21, 2022. This suit seeks judicial review of the Board's decision denying Ms. Rhodes' Reconsideration Request.

7.     This Court has the ability to reverse the Board's decision where it "is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997). Here, the Board's ruling on Ms. Rhodes' Reconsideration Request meets this test.

8.     First, the Board's denial was arbitrary and capricious because it disregarded without explanation the detailed and well-reasoned AO, which specifically found an association between Ms. Rhodes' misconduct during her service, including avoidance, disrespect, and substance abuse, and her PTSD related to military sexual trauma; and Ms. Rhodes' military sexual trauma resulting from abuse by a superior officer while in service. *See id.* (holding Board's decision was arbitrary where it failed to respond to two of petitioner's non-frivolous arguments).

9.     Second, the Board's denial was unsupported by substantial evidence because it failed to provide a reasoned explanation for the action taken. Despite the above evidence presented by the AO, Ms. Rhodes' personal statement, and the accompanying letters of support that outlined the impact her military sexual trauma had on her service and subsequent discharge, the Board concluded that amending the original decision was not warranted because Ms. Rhodes had been "in [a] bad relationship," was "surrounded by negative organizational culture" during her service, and had failed to "provide evidence of post-service achievements." In fact, there was

nothing in the record to suggest that Ms. Rhodes was discharged simply because of her purportedly misguided relationship choices and negative organizational culture. Indeed, her letters of support submitted to the Board state the opposite. Ms. Rhodes was hard-working, dedicated, and of sound judgment. She worked closely with other women in the Army who supported her, prior to the point at which she became a victim of sexual abuse by a superior officer.

10.    Third, the Board's decision is contrary to law because it failed to follow DoD's clarifying guidance requiring that the Board give liberal consideration to the entirety of the facts and circumstances. In particular, it disregarded without explanation: (a) Ms. Rhodes' PTSD, military sexual trauma, and that such issues mitigate any misconduct that took place during her service, (b) the fact that Ms. Rhodes' misconduct took place more than 35 years ago and that she has maintained being deeply remorseful of what took place during her service and at the time of her separation, and (c) Ms. Rhodes was young, impressionable, and had just graduated high school when she enlisted in the Army when she was subject to the abuse she endured.

11.    For these reasons and others, the Board's decision should be set aside.

12.    Ms. Rhodes accordingly requests that the Court: (a) declare the Board's decision is arbitrary and capricious, unsupported by substantial evidence, and contrary to law, (b) set aside the decision, and (c) upgrade Ms. Rhodes' discharge characterization or alternatively remand for further consideration of Ms. Rhodes' request. In support, Ms. Rhodes alleges as follows:

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 2201–2202, and may hear this action pursuant to the APA, 5 U.S.C. §§ 701–706, because Ms. Rhodes seeks review of final agency action for which there is no other adequate remedy.

14.    Venue in this Court is proper under 28 U.S.C. § 1391(e)(1) because Defendants are principally located in the District of Columbia and a substantial part of the events giving rise to the claim occurred in the District of Columbia.

## PARTIES

15.    Wendy Rochelle Rhodes is a United States Army veteran. She is a citizen of the United States, resides in Los Angeles, California, and served in the Army from March 18, 1987 to December 2, 1988.

16.    Defendant the United States Department of the Army is one of three service departments in the DoD. It has responsibility for the administration, control, and operation of the United States Army, a military organization primarily responsible for ground security and warfare operations. The civilian head of the Department of the Army is the Secretary of the Army.

17.    Defendant Christine E. Wormuth is the United States Secretary of the Army and is named solely in her official capacity. Ms. Wormuth is authorized by statute (10 U.S.C. § 1552) to act through a board of civilians to correct any military record of a former member of the Army when doing so is necessary to correct an error or remove an injustice.

18.    Defendant Agnes Gereben Schaefer is the Assistant Secretary of the Army for Manpower and Reserve Affairs and is named solely in her official capacity. Ms. Schaefer exercises authority delegated by the Secretary of the Army to accept or reject recommendations from the Board relating to applications for the correction of military records, including discharge upgrades.

19.    Defendant Dennis W. Dingle is the Director of the Army Board for Correction of Military Records and is named solely in his official capacity. Mr. Dingle exercises authority delegated by the Secretary of the Army to administer and oversee the Board's operation.

20.     Defendant Lloyd Austin is the Secretary of the United States Department of Defense and is named solely in his official capacity. Mr. Austin exercises authority over the DoD, which includes the Army.

## STATUTORY AND REGULATORY BACKGROUND

### I.     This Court's Authority to Correct Errors By The Board

21.     This Court has the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, without observance of procedure required by law, [and] unsupported by substantial evidence." 5 U.S.C. § 706. Accordingly, this Court has the authority to direct the Board to amend its findings in Ms. Rhodes' Reconsideration Request and upgrade her discharge status, or, in the alternative, remand this case back to the Board with instructions to address the deficiencies in its original findings.

22.     The Board, if directed to do so by this Court, has the authority to correct errors in its decisions. Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence. *Chappel v. Wallace*, 462 U.S. 296, 303 (1983).

23.     Federal regulations guide the Board's consideration of applications for correction. The Board operates within the Office of the Secretary of the Army, in accordance with 10 U.S.C. § 1552, and consists of civilians regularly employed in the executive part of the Department of the Army who are appointed by the Secretary of the Army and serve on the ABCMR as an additional duty. A panel consisting of at least three board members considers each application, with one member serving as the panel chair. *See* 32 C.F.R. § 581.3(c), (e). A majority vote of the panel constitutes an action of the Board. 32 C.F.R. § 581.3(g).

II.    **DoD Guidance to Board Regarding Mental Health, Equity, and Injustice**

24.    Over the past several years, the DoD has issued robust guidance for boards charged with making corrections to military and naval records.  This guidance was issued through several interpretive memoranda that provided clarification to the Board with respect to the review of discharge-upgrade applications filed by veterans with mental health conditions.  All these memoranda apply to veterans who received less-than-honorable discharges as a result of misconduct, including Other than Honorable discharges. Three of these memoranda provide guidance that is particularly relevant to this lawsuit: the Hagel Memo, the Kurta Memo, and the Wilkie Memo.

25.    Then Secretary of Defense, Chuck Hagel, issued what is now commonly known (and referred to herein) as the "Hagel Memo" on September 3, 2014. *See* Secretary of Defense, *Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder* (Sept. 3, 2014).[1]  The Hagel Memo provides that a discharge upgrade request must be given "liberal consideration" where "[s]ervice records or any document from the period of service substantiate the existence of one or more symptoms" of PTSD or a PTSD-related condition at the time of service. Hagel Memo Attachment at 1.

26.    The Hagel Memo further states:

> Liberal consideration will also be given in cases where civilian providers confer diagnoses of PTSD or PTSD-related conditions, when case records contain narratives that support symptomology at the time of service, or when any other evidence which may reasonably indicate that PTSD or a PTSD-related disorder existed at the time of discharge which might have mitigated the misconduct

---

[1] Available at: https://law.yale.edu/sites/default/files/documents/pdf/Clinics/vlsc_Hagel_Memo.pdf.

that caused the [other] than honorable conditions characterization of service.

*Id.*

27.    As detailed further below, the Board acknowledged that Ms. Rhodes "has been diagnosed by the VA with Post-Traumatic Stress Disorder ('PTSD') related to [military sexual trauma]." The Board further noted that, "[g]iven the nexus between avoidance, disrespect, and substance abuse and PTSD, it is the opinion of the Agency BH Advisor that there was direct association between applicant's PTSD and the misconduct that led to her discharge." Applying the Hagel Memo to the evidence presented by Ms. Rhodes here, the Board was required to consider PTSD or PTSD-related conditions as a mitigating factor in the misconduct that contributed to Ms. Rhodes' less-than-honorable discharge and give "liberal consideration" to her request for an upgrade. *See also* 10 U.S.C. § 1552(h).

28.    Building on the Hagel Memo, then-Under Secretary of Defense for Personnel and Readiness, Anthony Kurta, issued a memorandum on August 25, 2017 (the "Kurta Memo") which clarified that the previously issued interpretative guidance should benefit not only veterans who suffer from PTSD and PTSD-related conditions, but also those who face other service-related mental health conditions, such as military sexual trauma. *See* Under Secretary of Defense for Personnel and Readiness, *Clarifying Guidance to Military Discharge Review Boards and Boards for Correction of Military/Naval Records Considering Requests by Veterans for Modifications of their Discharge Due to Mental Health Conditions, Sexual Assault, or Sexual Harassment* (Aug. 25, 2017).[2]

---

[2] Available at: https://dod.defense.gov/Portals/1/Documents/pubs/Clarifying-Guidance-to-Military-Discharge-Review-Boards.pdf.

29.     The Kurta Memo requires Boards to give "liberal consideration" to discharge upgrade petitions that are based on mental health conditions, including PTSD, and military sexual trauma. Kurta Memo Attachment at 1. Veterans are not required to furnish proof of a physician's diagnosis in order to establish that they suffered from a mental health condition or military sexual trauma. Rather, according to the Kurta Memo, evidence of a mental health condition can include "statements from family members . . . [and] friends," "changes in behavior," "substance abuse," "episodes of depression," "misconduct" itself, and even the "veteran's testimony *alone*." *Id.* at 1–2 (emphasis added). In other words, a veteran's testimony that they suffered from a mental health condition or military sexual trauma is sufficient to establish that the condition existed or the experience occurred during military service, which in turn obligates the Board to give liberal consideration to a discharge upgrade petition that is based on that condition or experience.

30.     When giving liberal consideration in a case involving mental health conditions or military sexual trauma, the Kurta Memo further delineates four questions typically involved in requests for discharge relief:

1.  Did the veteran have a condition or experience that may excuse or mitigate the discharge?

2.  Did that condition exist or that experience occur during military service?

3.  Does that condition or experience actually excuse or mitigate the discharge?

4.  Does that condition or experience outweigh the discharge?

*Id.* at 1.

31.     The Kurta Memo also clarifies that mental health conditions and sexual assault and sexual harassment "inherently affect one's behaviors and choices causing veterans to think and behave differently than might otherwise be expected." *Id.* at 4. Importantly, the memo states that

relief may be appropriate for misconduct commonly associated with mental health conditions or behaviors commonly associated with sexual assault. *Id.* at 1.

32.     On July 25, 2018, then-Under Secretary of Defense Robert Wilkie issued guidance to clarify and assist with determinations involving equity, injustice, or clemency (the "Wilkie Memo"). *See* Under Secretary of Defense for Personnel and Readiness, *Guidance to Military Discharge Review Boards and Boards for Correction of Military / Naval Records Regarding Equity, Injustice, or Clemency Determinations* (July 25, 2018).[3]

33.     The Wilkie Memo centers around ideas of fairness and states that "[i]t is consistent with military custom and practice to honor sacrifices and achievements, to punish only to the extent necessary, to rehabilitate to the greatest extent possible, and to favor second chances in situations in which individuals have paid for their misdeeds." *Id.* at 1. The Wilkie Memo further requires Boards to consider that "[a]n honorable discharge characterization does not require flawless military service," and that "[m]any veterans are separated with an honorable characterization despite some relatively minor or infrequent misconduct." *Id.* at 2.

34.     The Wilkie Memo lists several factors that the Board should consider when evaluating a discharge upgrade petition, including an applicant's "[a]cceptance of responsibility, remorse, or atonement for misconduct," post-discharge conduct, "[l]etters of recommendation," "[c]haracter references," and whether the misconduct may have been because of "youthful indiscretion." *Id.* at 3.

---

[3] Available at: https://arba.army.pentagon.mil/documents/Wilke20180725JusticeEquity Clemency.pdf.

## MS. RHODES' IN-SERVICE AND POST DISCHARGE BACKGROUND

I.    **Ms. Rhodes' Military Service**

    **A.  Ms. Rhodes Served Honestly and Faithfully.**

35.    Wendy Rochelle Rhodes was born on September 26, 1964 in Los Angeles, California. Family was central to Ms. Rhodes' upbringing and a sense of service was instilled in Ms. Rhodes from a young age.

36.    Shortly after graduating high school, Ms. Rhodes attended a community college in Los Angeles. After earning a few credits, she enlisted in the Army on March 18, 1987.

37.    Because of her college experience, she entered the Army at an advanced rank of E-3. For her first duty assignment, she was stationed in Fort Polk, Louisiana with unit MOS 64 Charlie, a truck driving unit. Women were significantly underrepresented in this unit—Ms. Rhodes was only the thirteenth female to join the unit.

38.    As demonstrated by the letters of support Ms. Rhodes would later attach to her request for discharge upgrade, she was supported by other women serving in her unit, who were a tight-knit group described as a "small group of girls with a mission." Others in Ms. Rhodes' unit described her as consistently pulling her weight, understanding the value of hard work, working well with other soldiers, and having an outgoing personality.

39.    While serving in the Army, Ms. Rhodes was highly decorated at the time of her discharge. She was recognized by the United States Department of Agriculture's Forest Service for her assistance in building a functional fire team that suppressed one of the largest and most destructive wildfires in the Kisatchie National Forest in 1987, which was brought under control after burning through 7,500 acres of land. Ms. Rhodes was also awarded the 5th Infantry Division (Mechanized) Red Devil Chip for her exemplary performance of duty and desire to excel.

**B.  Ms. Rhodes Endured Military Sexual Trauma by a Superior Officer.**

40.    Not long after enlisting, Ms. Rhodes met Sergeant Eichelle Porter. Sergeant Porter made multiple unwelcome sexual advances toward Ms. Rhodes. After several months of politely declining his advances, Ms. Rhodes reluctantly agreed to go out sporadically with Sergeant Porter.

41.    Sergeant Porter was incredibly abusive toward Ms. Rhodes mentally, physically, and sexually. One evening, Sergeant Porter approached Ms. Rhodes and demanded that she come with him urgently. Given that Sergeant Porter was of higher rank and Ms. Rhodes was only a private, she obliged. Sergeant Porter then drove Ms. Rhodes into the woods, pulled her out of his car, and held a razor blade to her throat before slicing her clothes off and raping her.

42.    Others in Ms. Rhodes' unit noticed the shift in her personality once she became subject to Sergeant Porter's abuse. She became less interested in her work, easily agitated, and distant. Fellow soldiers she once adored in the unit found themselves in arguments or other altercations with Ms. Rhodes. Because of Sergeant Porter's abuse, she became the opposite of the fun, joyful, and disciplined individual she was when she originally joined the military. Sergeant Porter's abuse was even visible in how Ms. Rhodes presented herself during this time—her uniforms and boots did were unkempt, and her outlook and attitude had markedly changed.

43.    As part of the abuse Ms. Rhodes endured, Sergeant Porter also employed numerous tactics to manipulate and maintain control over her. For example, Sergeant Porter used and sold illegal drugs and often forced Ms. Rhodes to partake by holding a pipe to her mouth to smoke. Sergeant Porter also deliberately isolated Ms. Rhodes by insisting on picking her up and dropping her off at work every day and strictly prohibiting her from walking or carpooling with her unit.

**C.  The Military Sexual Trauma Impacted Ms. Rhodes' Service.**

44.    As a result of Sergeant Porter's abusive conduct, Ms. Rhodes began struggling with her service obligations. In August 1987, Sergeant Porter forced Ms. Rhodes to stay in his barracks

12

overnight, which resulted in her receiving an Article 15 for failing to obey a lawful order in violation of Article 92 of the Uniform Code of Military Justice ("UCMJ").

45.     Things came to a head in November 1987. From November 3 through 6, she received a second Article 15 for (1) being absent without leave for three days in violation of UCMJ Article 86 and (2) disobeying a lawful order and being disrespectful toward a noncommissioned officer on November 6 in violation of UCMJ Article 91. As a result, among other things, she was sentenced to 45 days of restriction, which limited her movement to specified locations on the base. She was eventually convicted at a summary court-martial of two out of four charged instances of breaking restriction.

46.     On November 7, Sergeant Porter insisted on driving Ms. Rhodes to a hotel room off post. Unbeknownst to Ms. Rhodes, the Vernon Parish police were investigating Sergeant Porter for selling cocaine in Leesville, Louisiana. The police secured a warrant to search Sergeant Porter's car three days before.

47.     While Ms. Rhodes was in Sergeant Porter's car, the police pulled Sergeant Porter over and executed the search warrant. Ms. Rhodes has always been an avid collector of music. In 1987, she had about 120 cassette tapes, which she labeled with her first name. Despite Ms. Rhodes' objections and repeated demands that he not do so, Sergeant Porter stored cocaine in her empty cassette tapes. During their search, among other items, the police found a cassette tape labeled "Wendy" filled with pouches of cocaine and three razor blades in Sergeant Porter's car.

48.     The police arrested both Sergeant Porter and Ms. Rhodes and the State of Louisiana charged them both with possession of cocaine with intent to distribute. Their cases were jointly tried, and on June 14, 1988, Sergeant Porter was found guilty as charged. The jury also found Ms. Rhodes guilty of possession of cocaine. On September 6, 1988, Ms. Rhodes was sentenced to

six months in jail and five years of probation. Five years later, Ms. Rhodes received a first offender pardon.

49.     On the basis of the above instances of misconduct, Ms. Rhodes was recommended for administrative separation from the Army in July 1988. As a part of the process, Ms. Rhodes appeared before an administrative separation board that found that Ms. Rhodes had committed acts constituting a pattern of misconduct and recommended separation with an "Other Than Honorable" characterization of her service. The separation was approved in November 1988 and Ms. Rhodes was discharged from the Army on December 2, 1988.

## II.     **Following Her Service, Ms. Rhodes Suffered from PTSD, Major Depressive Disorder, and Alcohol Use Disorder Because of the Abuse She Experienced.**

50.     After her discharge, Ms. Rhodes struggled with mental health symptoms and substance abuse for many years.

51.     In 1988, she leaned on her family and moved in with her grandmother. Despite being in the comfortable embrace of a supportive family member, Ms. Rhodes experienced nightmares and challenges with intimate relationships. Ms. Rhodes also experienced disassociation with the present and feeling numb and disconnected with life. She felt that she had lost so much when she was discharged from the Army. At times, Ms. Rhodes turned to alcohol as a coping mechanism.

52.     In 2016, Ms. Rhodes decided to make a change in her life and felt that her other than honorable discharge status did not accurately represent her time in the Army. She filled out an application and requested that the Board grant her a discharge upgrade.

53.     Unfortunately, as she fought for an upgrade, the emotions she felt surrounding her abuse resurfaced. The sleepless nights returned. She would wake up in the middle of the night in

a panic and check the locks in her home to make sure no one could enter and hurt her. Intrusive thoughts and the unwanted memory of her rape occupied her mind.

54.    Ms. Rhodes' history of military sexual trauma haunted her so much so that she sought treatment at a VA facility in 2017. Ms. Rhodes described the physical, sexual, and emotional abuse she suffered and her symptoms to her doctors. She was prescribed medication for her anxiety and depressive thoughts. As Ms. Rhodes' treatment progressed, she attended group therapy for survivors of military sexual trauma. Over the next few years, Ms. Rhodes consistently attended group and individual therapy to cope with her symptoms of PTSD related to military sexual trauma.

## III.    Since Her Discharge, Ms. Rhodes Has Lived a Life Defined by Resilience.

55.    Despite the numerous challenges she experienced during and shortly after her service, Ms. Rhodes did her best to pick herself up following her discharge, never made excuses, and worked hard to set herself on a path toward a productive, meaningful life. She explored a variety of career paths: attending welding school, completing a certificate to pursue working as a paralegal, and earning credentials in the field of real estate.

56.    Nothing is more important to Ms. Rhodes than her family. She raised two daughters, primarily as a single parent, and maintains a very close relationship with each of them. Despite the challenges she experienced in her personal life, Ms. Rhodes has remained devoted to her children, and has done everything possible to be a good example for them. Her youngest daughter was a decorated track team member in high school and is in her first semester of college, and her oldest daughter has served for over three years in the United States Air Force. Despite the traumatic experiences Ms. Rhodes was subjected to in the Army, she has always been supportive of her daughter serving in the armed forces. In fact, Ms. Rhodes has expressed that she wishes she could have re-enlisted in the Army and belong to something greater than herself again.

57.    Ms. Rhodes remains deeply remorseful for the events taking place leading up to her discharge, which were also during an indescribably difficult time in her life as a young woman in the Army.  Ms. Rhodes remains committed to exemplifying the Army's values of loyalty, duty, respect, selfless service, honor, integrity, and personal courage as she navigates the challenges she experienced both during and following her service.

## PROCEDURAL BACKGROUND

## I.    The Board Denied Ms. Rhodes' Discharge Upgrade Request.

58.    On October 26, 2016, Ms. Rhodes applied to the ABCMR and requested that her "Other than Honorable" discharge be upgraded to "Honorable" or "General Under Honorable Conditions." Along with her request, Ms. Rhodes attached supporting documentation, which included, *inter alia*, a personal statement describing the abuse she endured at the hands of Sergeant Porter during her service and six letters of support from close friends and family attesting to Ms. Rhodes' character and post-service contributions.

59.    In 2017, Ms. Rhodes applied to the VA for service-connected disability compensation for the first time, claiming PTSD related to military sexual trauma. The examiner opined that her mental health conditions were related to the abuse and trauma she experienced at the hands of Sergeant Porter. Based on these findings, the VA granted service connection for treatment purposes only for PTSD and major depressive disorder ("MDD") with secondary alcohol use disorder because the evidence showed a link between her mental health diagnoses and military service. Due to Ms. Rhodes' discharge characterization, however, she was not entitled to compensation for her service-connected conditions.

60.    Ms. Rhodes' request for a discharge upgrade from the ABCMR was denied on April 1, 2020. The Board found that relief was not warranted based on Ms. Rhodes' short period

16

of honorable service followed by a "lengthy period of misconduct," and a "lack of sufficient corroborating evidence to support [Ms. Rhodes'] statement."

## II.    The Board Also Denied Ms. Rhodes' Reconsideration Request.

61.    Following the Board's denial of her initial request, Ms. Rhodes filed the Reconsideration Request, which was a request for reconsideration of the Board's initial decision based on the new evidence Ms. Rhodes provided for the Board. In addition to the materials she included in her original request for a discharge upgrade, Ms. Rhodes also attached an order of search and search warrant related to her civilian conviction, documentation of her full pardon associated with her civilian conviction, a VA DoD Identity Repository printout, and an additional personal statement.

62.    Ms. Rhodes Reconsideration Request was denied on June 21, 2022.

63.    The Board begins its decision by stating that it carefully considered Ms. Rhodes' original request, supporting documents, a medical review, and published DoD guidance.

64.    The medical review consisted of a Behavioral Health Advisor's AO, which found that Ms. Rhodes "ha[d] been diagnosed by the VA with PTSD related to military sexual trauma." After reviewing Ms. Rhodes' medical record, the Health Advisor came to the opinion that there was a "direct association between [Ms. Rhodes'] PTSD and the misconduct that led to her discharge" and a "nexus between avoidance, disrespect, and substance abuse and PTSD." *Id.* Moreover, the Health Advisor stated that "[i]n accordance with Liberal Consideration guidance, [Ms. Rhodes'] military sexual trauma outweighs the misconduct that led to her separation." *Id.* Accordingly, the Health Advisor recommended that the Board upgrade Ms. Rhodes' discharge to "Honorable." *Id.*

65.    The Board, however, despite noting that it "considered [Ms. Rhodes'] medical records and the review and conclusions of the reviewing official," chose to deviate from the AO's

recommendation. It found that an upgrade was not warranted because Ms. Rhodes was in a "bad relationship, and surrounded by negative organizational culture." *Id.* The Board also stated in its rationale that Ms. Rhodes "did not provide evidence of post-service achievements." *Id.*

III.  **The Board's Denial of Ms. Rhodes' Petition is Arbitrary and Capricious, Unsupported by Substantial Evidence, and Contrary to Law.**

66.     The Board's decision is fatally flawed for several reasons.

67.     First, the Board's decision was arbitrary and capricious and unsupported by substantial evidence because it failed to provide a reasoned explanation for its denial. The Board dismissed Ms. Rhodes' military sexual trauma as simply being in a "bad relationship" with "negative organizational culture" and despite acknowledging the AO, which found a nexus between her misconduct and her diagnosed PTSD related to military sexual trauma, concluded that no upgrade was warranted. The Board blatantly failed to provide any explanation for why it disregarded Ms. Rhodes' diagnoses, consistent reports of military sexual trauma, and the AO's finding of a direct association between her PTSD and the misconduct.

68.     Second, the Board acted contrary to law when it failed to properly apply the "liberal consideration" required by DoD guidance to Ms. Rhodes' upgrade request and provided no explanation as to how it applied this standard.

69.     Under the Kurta, Hagel, and Wilkie memos, the Board was required to consider PTSD or PTSD-related conditions,  as well as military sexual trauma,  as a mitigating factor in the misconduct that contributed to Ms. Rhodes' less-than-honorable discharge and give "liberal consideration" to her request for an upgrade. The Board was also required to consider the amount of time that has passed since the misconduct, whether the veteran has expressed remorse for the misconduct, and whether any misconduct was the result of "youthful indiscretion."

70.     The Board, contrary to law, incorrectly held that a mitigating factor, Ms. Rhodes' PTSD diagnosis related to military sexual trauma, was insufficient to warrant a discharge upgrade. In addition to failing to apply the "liberal consideration" standard, the Board's decision failed to consider several factors that DoD guidance requires Boards to apply when evaluating discharge-upgrade petitions. Its finding was also contrary to law, as the Board failed to show how it properly applied *any* standard in rendering its findings, much less an explanation of how it applied the required standards in the first place.

71.     The Board also disregarded the fact that it has been more than 35 years since Ms. Rhodes was discharged from the military, that her remorse for her actions was reiterated multiple times in her own personal statements and in supporting statements from her character witnesses, and that she had just graduated high school when she enlisted and was subject to the military sexual trauma she experienced at the hands of an abusive superior officer.

72.     By failing to provide a reasoned analysis for its decision and failing to apply these required factors under the "liberal consideration" standard, the Board did not properly apply the standard for relief provided by applicable DoD guidance.

73.     For the above reasons, the Board's decision for the Reconsideration Request is arbitrary and capricious, contrary to law, unsupported by substantial evidence, and without observance of procedure required by law.

74.     The Board's decision should be set aside for these reasons.

## **CLAIM FOR RELIEF**

Violation of APA – Arbitrary and Capricious, Unsupported by Substantial Evidence, and Contrary to Law

75.     The above paragraphs are incorporated herein by reference.

76.    The Board's denial of Ms. Rhodes' Reconsideration Request was erroneous and should be reversed because it was arbitrary and capricious, unsupported by substantial evidence, and contrary to law. "One of the basic procedural requirements of administrative rulemaking is that an agency must give adequate reasons for its decisions." *Encino Motorcars, LLC*, 579 U.S. at 221. Under that standard, agency action is unlawful if the agency fails to articulate a rational connection between the facts found and the choice made, fails to consider an important aspect of the problem, or offers an explanation for its decision that runs counter to the evidence. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

77.    Further, in reviewing a decision of the ABCMR, the District Court "must be able to conclude that the Board 'examined the relevant data and articulated a satisfactory explanation for its action.'" *Kreis v. Sec'y of the Air Force*, 406 F.3d 684, 686 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43) (in the context of the Air Force Board for Correction of Military Records' denial of a request for reconsideration).

78.    The Court should find that the Board's decision is unlawful because it is arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

79.    The Board's denial of Ms. Rhodes' Reconsideration Request was arbitrary and capricious because it failed to provide a reasoned explanation for the action taken. Although the Board acknowledged the AO that found a direct association between her PTSD and her misconduct, it still concluded that no upgrade was warranted because Ms. Rhodes was simply "in a bad relationship" and "surrounded by negative organizational culture." The Board's finding was improperly conclusory and failed to explain *how* it reached this conclusion. It also provided no explanation for why it discounted Ms. Rhodes' PTSD diagnosis, the consistent reports of military

sexual trauma, and the AO's finding of a nexus between Ms. Rhodes' misconduct and her PTSD related to military sexual trauma.

80.     The Board's denial of Ms. Rhodes' Reconsideration Request was also unsupported by substantial evidence because it did not properly weigh the evidence that would support upgrading Ms. Rhodes' discharge. In fact, the Board's decision is completely devoid of any consideration of Ms. Rhodes' PTSD diagnosis and military sexual trauma as mitigating factors to her misconduct. The Board, despite stating that it "considered the medical records and the review and conclusions of the reviewing official," blatantly disregarded the various markers in Ms. Rhodes' service record that show, at the time of her misconduct, she was suffering from undiagnosed PTSD related to the military sexual trauma she was experiencing. During her time in the Army, Ms. Rhodes was subject to physical, sexual, and emotional abuse at the hands of a superior. The decision did not recognize that Ms. Rhodes served honorably before meeting Sergeant Porter, fails to consider Ms. Rhodes' Article 15s and summary court-martial occurred only after Sergeant Porter began abusing her, declines to factor in that Ms. Rhodes's civilian conviction was the fruit of a search warrant issued for Sergeant Porter, and ignores statements from several colleagues who observed how Sergeant Porter forced Ms. Rhodes to go down a wrong path.

81.     The Board's decision was further unsupported by substantial evidence because it failed to acknowledge the AO's recommendation, after the Health Advisor's holistic evaluation, that Ms. Rhodes' discharge status should be upgraded to "Honorable." The AO's recommendation specifically found an association between Ms. Rhodes' misconduct during her service, including avoidance, disrespect, and substance abuse, and her PTSD related to military sexual trauma; and that Ms. Rhodes' military sexual trauma resulted from abuse by a superior officer while in service.

82.     The Board's decision is contrary to law because it failed to follow DoD's clarifying guidance.  Specifically, the Board failed to provide the "liberal consideration" required under the Kurta and Hagel memos to upgrade petitions where the record shows that the petitioner suffered from one or more PTSD or other mental health symptoms at the time of their misconduct.  Yet, the Board's decision did not even attempt to explain why Ms. Rhodes fails to meet the "liberal consideration" standard or whether it applied the standard at all in light of Ms. Rhodes's strong showing of military sexual trauma, MDD, and PTSD.  Ignoring Ms. Rhodes' consistent reports of military sexual trauma and other abuse, the VA's diagnosis of PTSD related to this trauma, and the AO's recommendation that relief be granted does not comply with liberal consideration as required by 10 U.S.C. § 1552(h) and the Hagel and Kurta memos.

83.     The decision also did not acknowledge, as it is required to do under the Kurta and Hagel memos, that there are "heightened screening[s]" today for service members with mental health conditions than there were at the time of Ms. Rhodes' misconduct, Kurta Memo Attachment at 4; and that the VA diagnosed Ms. Rhodes with PTSD related to military sexual trauma and prescribed her medication to treat these conditions, *see* Hagel Memo (requiring Boards to consider PTSD and related conditions as mitigating evidence). *See also* Kurta Memo at 2 (requiring the Board to consider a VA determination granting service connection as "persuasive evidence" that the condition existed during military service).

84.     The Board's decision also ignored guidance from the Wilkie Memo, which requires the Board to consider the length of time since misconduct, whether misconduct occurred because of "youthful indiscretion," and acceptance of responsibility, remorse, or atonement for misconduct.

85.     Ms. Rhodes was discharged from the Army in 1988—more than 35 years ago. Ms. Rhodes has also repeatedly expressed her remorse for the events that took place during her

service, noting that the abuse she endured played a significant role in the misconduct that led to the circumstances of her separation. Finally, Ms. Rhodes enlisted in the Army shortly after she graduated from high school and was only 18 or 19 when she was subject to the abuse she endured. Although she worked hard and had sound judgment while enlisted, she was still young, impressionable, and taken advantage of by Sergeant Porter and his manipulative abuse during her service. Since her discharge, Ms. Rhodes has received a formal pardon and has been deeply remorseful of the events that took place during her service and regrets the misconduct that took place. Despite the Board's incorrect finding that Ms. Rhodes did not provide evidence of any post-service achievements, this has been repeatedly emphasized by the letters of support she attached to her original discharge upgrade request and by her own statements.

86.    By disregarding DoD's guidance and failing to consider the AO properly, the Board failed to apply the "liberal consideration" standard provided by DoD guidance.  Specifically, the Board rendered a decision that was unsupported by the law and both "failed to consider an important aspect of the problem" before it—multiple aspects, in fact, that it was required to consider under DoD guidance—and "offered an explanation for its decision that runs counter to the evidence," which was strongly and undisputedly in favor of relief. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.  The Board therefore acted contrary to law and abused its discretion in denying Ms. Rhodes' Reconsideration Request.

87.    The ABCMR found that a discharge upgrade was not warranted but failed to grapple with the opposite conclusion in the AO, which recommended an upgrade based on the nexus between Ms. Rhodes misconduct and her diagnosed PTSD related to military sexual trauma. Therefore, the ABCMR's denial of Ms. Rhodes' Reconsideration Request—without reasoned explanations for it doing so—does not comply with liberal consideration as required by 10 U.S.C.

§ 1552(h) and the Hagel, Kurta, and Wilkie Memos and is arbitrary, capricious, unsupported by substantial evidence, and contrary to law.

88.    In light of the foregoing, the ABCMR's decision should be set aside.

### RELIEF REQUESTED

WHEREFORE, Ms. Rhodes respectfully requests that this Court issue judgment in her favor and against Defendants, and grant the following relief:

A.    Vacate the Board's denial of Ms. Rhodes's Reconsideration Request;

B.    Declare that the Board's decision as to Ms. Rhodes' Reconsideration Request was arbitrary and capricious, unsupported by substantial evidence, contrary to law, and without observance of procedure required by law;

C.    Upgrade Ms. Rhodes' discharge characterization from "Under Other than Honorable Conditions" to "Honorable" or "General Under Honorable Conditions;"

D.    Correct Ms. Rhodes' Army records consistent with the above relief;

E.    In the alternative, remand for further proceedings to correct errors identified above;

F.    Grant Ms. Rhodes reasonable attorney's fees and expenses pursuant to 28 U.S.C. § 2412; and

G.    Award such further relief as this Court deems just and proper.

Dated:  December 30, 2024

Respectfully submitted,

*/s/* Jasmine Wang
Jasmine Wang (DC Bar No. 90007796)
Robert T. McMullen (DC Bar No. 90014556)
Heather Habes (pro hac vice pending)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
(202) 662-6000
jawang@cov.com
rmcmullen@cov.com
hhabes@cov.com


Rochelle  Bobroff (DC Bar No. 420892)
Abigail Reynolds (DC Bar No. 1735880)
NATIONAL VETERANS LEGAL SERVICES PROGRAM
1100 Wilson Blvd, Suite 900
Arlington,  VA 22209
(202) 621-5709
Rochelle@nvlsp.org
Abigail@nvlsp.org